# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

| | |
|---|---|
| David Atkins,<br>    Plaintiff, | )<br>)<br>) |
| v. | )     1:18cv354 (LMB/TCB) |
| Lt. Glaser, et al.,<br>    Defendants. | )<br>)<br>) |

## MEMORANDUM OPINION

David Atkins, a former Virginia inmate proceeding pro se, has filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights during his incarceration. He specifically claims that he endured defendants' use of excessive force and deliberate indifference to his medical needs. Plaintiff further alleges that defendants are responsible for the loss of his personal belongings and that defendant Sheriff Baron is liable for all other defendants' actions in his supervisory capacity. Defendants Samboy, Glaser, Williams, Cleek, and Baron have filed Motions to Dismiss, as well as memoranda in support thereof. Dkt. Nos. 10-13. Plaintiff was provided the Notice required by Local Rule 7(K) and the opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). He later filed a Motion for Judgment. Dkt. No. 16. For the reasons that follow, defendant Samboy's Motion to Dismiss will be granted, defendants Glaser, Williams, Cleek, and Baron's Motion to Dismiss will be granted in part and denied in part, and plaintiff's Motion for Judgment will be denied without prejudice, as premature. The denial of defendants Glaser, Williams, Cleek, and Baron's Motion to Dismiss is without prejudice to their ability to file a properly-supported Motion for Summary Judgment.

## I. Background

The following allegations are assumed true for the purpose of ruling on defendants' Motions to Dismiss. While plaintiff was incarcerated at Norfolk City Jail in 2014, defendant Nurse Samboy concluded that plaintiff suffered from epilepsy and added this information to his institutional medical records. Compl. § IV, p. 1. Accordingly, Nurse Samboy altered plaintiff's diet to address his apparent medical condition. Id. Plaintiff suffered seizures, headaches, and cold sweats in the time that followed. Id.

Three years later, on October 21, 2017, plaintiff received a lunch tray which contained an insect. Id. at 2. Plaintiff rejected his food, notified Officer Turner, and later complied with an investigation of the incident by Lieutenant Glaser. Id. The lieutenant asked defendant Sergeant Williams to "take [plaintiff] to Section 1 where no-one could see [him]." Id. at 3. Plaintiff asked the sergeant why he was being moved, and Williams responded by attempting to "put [plaintiff's] face though [sic] the wall." Id. at 3-4.

Once plaintiff was relocated, Lt. Glaser teased him regarding the lunch tray incident, stating that plaintiff should have eaten the bug and asked, "You wish you would have [eaten it] now, don't you?" Id. at 4. Officer Cleek then said, "Atkins I fucked that bug up, It [sic] was good, you should have eaten it. But you refused it. That was your meal." Id. at 5.

At some point during or after this encounter, plaintiff lost and then regained consciousness due to a seizure, falling to the floor in the process. Id. Doctors at Norfolk General Hospital determined that, when plaintiff lost consciousness and fell, he chipped a bone in his left arm. Id. When plaintiff returned to Norfolk City Jail, he was denied pain medication despite the fact that it was prescribed by hospital staff. Id. at 7. Additionally, plaintiff directed a letter to Sheriff Baron in which he complained about his diet at the institution and its effect on his overall health. Id. at 6.

Plaintiff was transferred to Hampton Roads Regional Jail ("HRRJ") on October 25, 2017. Id. at 9-10. During this process, plaintiff learned that Norfolk City Jail staff had lost a chain belonging to plaintiff worth $1,800. Id.

## II. Standard of Review

A motion to dismiss tests whether a complaint states a cause of action upon which relief can be granted. Whether a complaint sufficiently states a claim is determined by "the familiar standard... under Fed. R. Civ. P. 12(b)(6)." Sumner v. Tucker, 9 F.Supp. 2d 641, 642 (E.D. Va. 1998). Accordingly, a plaintiff's alleged facts are presumed true, and the complaint should be dismissed only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A plaintiff's allegations must "raise a right to relief above the speculative level," and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard. Id.

Where a complaint is filed by a litigant acting pro se, that complaint must be construed liberally regardless of how unskillfully it is pleaded. Haines v. Kerner, 404 U.S. 519 (1972). Such litigants are not held to the strict pleading requirements demanded of attorneys. Estelle v. Gamble, 429 U.S. 97, 106-07 (1976). Indeed, a court's "power to summarily dismiss a prisoner's pro se complaint is limited." Figgins v. Hudspeth, 584 F.2d 1345, 1347 (4th Cir. 1979).

## III. Analysis

1. **Defendant Samboy's Motion to Dismiss** [Dkt. No. 10]

Prisoners are entitled to reasonable medical care and may sue prison officials under the Eighth Amendment if such care is inadequate. Estelle, 429 U.S. at 104-05. To state a claim, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. A plaintiff must therefore satisfy two distinct elements: first, he must allege the existence of a sufficiently serious medical need. See, e.g., Hall v. Holsmith, 340 Fed. Appx. 944, 947 & n.3 (4th Cir. 2009) (holding that flu-like symptoms did not constitute a serious medical need); Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is sufficiently serious).

Second, he must allege deliberate indifference to that serious medical need. Under this prong, an assertion of mere negligence or even malpractice is not sufficient to state an Eighth Amendment violation; only "actual intent or reckless disregard" will constitute deliberate indifference. Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). The prisoner must allege that a defendant's actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id. A prisoner's disagreement with medical personnel over the course of his treatment does not make out a cause of action. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

Defendant Samboy argues that this claim must be dismissed pursuant to the relevant statute of limitations, where plaintiff alleges actions dating to 2014, ostensibly rendering Samboy's actions time-barred. Because there is no federal statute of limitations for § 1983 claims, the state limitations period which governs personal injury actions is applied. See Wilson v. Garcia, 471 U.S. 261, 280 (1985). Virginia has a two-year statute of limitations for personal injury claims

4

under Virginia Code § 8.01-243(A), which is the applicable statute of limitations in this action. See Shelton v. Angelone, 148 F. Supp. 2d 670, 677 (W.D. Va. 2001), aff'd, 49 Fed. Appx. 451 (4th Cir. Oct. 30, 2002) (unpublished opinion). Additionally, federal courts are "obligated not only to apply the analogous state statute of limitations to federal constitutional claims brought under § 1983, but also to apply the State's rule for tolling that statute of limitations." Scoggins v. Douglas, 760 F.2d 535, 537 (4th Cir. 1985) (citing Board of Regents v. Tomanio, 446 U.S. 478, 484-86 (1980)). Such an analysis is unnecessary in this instance, where plaintiff has failed to allege sufficient facts in support of this claim.

Plaintiff's only allegations regarding defendant Samboy relate to her 2014 conclusion that plaintiff suffered from epilepsy. Though seizures very likely constitute "serious medical needs," plaintiff has not alleged any facts that suggest defendant Samboy acted with deliberate indifference to those needs. Indeed, plaintiff states that defendant Samboy altered his diets to treat what she believed was a medical condition. Compl. § IV, p. 1. Even if Nurse Samboy misdiagnosed plaintiff as he suggests and provided him an inappropriate dietary regimen for his true medical status, plaintiff fails to allege facts that would support an inference that she did so intentionally or recklessly. In that light, dismissal of plaintiff's claims against Nurse Samboy is appropriate pursuant to Fed. R. Civ. P. 12(b)(6), and defendant Samboy's Motion to Dismiss will be granted.

2. **Defendants Glaser, Williams, Cleek, and Baron's Motion to Dismiss [Dkt. No. 12]**

   a.   *Excessive Force*

In determining whether a complaint states an Eighth Amendment claim that a defendant used excessive force, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). "When prison officials maliciously and sadistically use force to

5

cause harm, contemporary standards of decency always are violated... whether or not significant injury is evident." Hudson, 503 U.S. at 9.

The extent of injury suffered by the inmate is, however, relevant to the Eighth Amendment inquiry, both because it may suggest whether the use of force plausibly could have been thought necessary in a particular situation, Whitley v. Albers, 475 U.S. 312, 321 (1986), and because it may provide some indication of the amount of force applied. Wilkins v. Gaddy, 559 U.S. 34, 36 (2010) (rejecting the notion that an excessive force claim involving only de minimis injury is subject to automatic dismissal). The Eighth Amendment generally excludes from constitutional recognition de minimis uses of physical force, Hudson, 503 U.S. at 9, and an inmate who complains of a "push or shove" that causes no discernable injury "almost certainly" fails to state a valid excessive force claim. Id. (internal citations omitted). Nevertheless, "[i]njury and force... are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins, 559 U.S. at 38.

Defendant Williams moves to dismiss plaintiff's claim of excessive force, arguing that a mere attempt to push plaintiff's face into a wall, without resulting physical injury or harm, cannot support an Eighth Amendment claim. Dkt. No. 13, p. 11. Plaintiff alleges that at the time of the incident, "there was no conflict between [him] and another inmate, there was [sic] no security issues." Compl. at 4. Taking plaintiff's allegations as true, Hishon, 467 U.S. at 73, it is reasonable to infer that Williams's actions were done maliciously and sadistically to cause harm to plaintiff rather than to maintain or restore discipline. Accordingly, plaintiff has sufficiently alleged a claim for use of excessive force, and Williams's Motion to Dismiss will be denied.

### b. *Deliberate Indifference*

To establish a claim for cruel and unusual punishment due to conditions of confinement, a plaintiff must allege facts sufficient to show (1) an objectively serious deprivation of a basic human need, that is, one causing serious physical or emotional injury, and (2) that prison officials were deliberately indifferent to that need. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To meet the first prong, plaintiff must allege facts sufficient to show that the condition complained of was a "sufficiently serious" deprivation of a basic human need. Id. Only extreme deprivations will make out an Eighth Amendment claim, and it is plaintiff's burden to allege facts sufficient to show that the risk from the conditions of his confinement was so grave that it violated contemporary notions of decency and resulted in serious or significant physical or emotional injury. Hudson, 503 U.S. at 8. To meet the second prong, plaintiff must allege facts sufficient to show that defendants knew of circumstances from which an inference could be drawn that a "substantial risk of serious harm" was posed to plaintiff's health and safety, that they drew that inference, and that they then disregarded the risk. Farmer, 511 U.S. at 837.

### i. Denial of Replacement Lunch

Although the denial of a single meal does not necessarily constitute cruel and unusual punishment, the denial of a meal to an individual with a history of seizures presents a different set of risks. In support of the "serious physical or emotional injury prong," plaintiff alleges that due to a seizure, which followed being denied a meal, he lost consciousness, resulting in a chipped bone in his left arm. Compl. § IV, p. 5. As to the deliberate indifference prong, plaintiff asserts that he had six seizures in Norfolk City Jail before to the one in question and that his medical records indicated that he was epileptic. Id. at 1, 5. It is therefore reasonable to infer that defendants were aware of plaintiff's history of medical problems and nevertheless denied him replacement food,

7

thereby ignoring a significant risk of harm. Accordingly, defendants' Motion to Dismiss will be denied as to this claim.

### ii. Denial of Pain Medication

"[A] medical treatment claim cannot be brought against non-medical personnel unless [the non-medical professional defendants] were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct." Lewis v. Angelone, 926 F.Supp. 69, 73 (W.D. Va. 1996). Here, defendants Williams, Cleek, Glaser, and Baron are not medical professionals, and plaintiff does not allege that any was involved in the failure to provide him with pain medication for his chipped bone. Plaintiff's written request on this issue was directed to the medical unit, and there is no indication that any of the named defendants were aware of it. Compl., Exh. D. Because plaintiff does not allege that any of the defendants was even tangentially involved in the decision to deny him pain medication, defendants' Motion to Dismiss will be granted as to this claim.

### c. *Loss of Property*

The Fourteenth Amendment provides that, "no state shall... deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. Where deprivation of property results from an established state procedure, due process requires the state to provide a pre-deprivation hearing. See Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982). In certain circumstances, where it is impractical to provide a hearing before a deprivation of property, the availability of meaningful post-deprivation procedures satisfies the requirements of due process. Parratt v. Taylor, 451 U.S. 527, 538 (1981) (due process satisfied by post-deprivation remedies when deprivation result of random, unauthorized acts of state actors). This rule applies equally to negligent and intentional deprivations of property by state actors. Hudson v. Palmer, 468 U.S. 517,

533 (1984) (due process satisfied by post-deprivation remedy to redress intentional destruction of property by prison guard during cell "shakedown"). The Virginia Tort Claims Act provides plaintiff an adequate remedy for the loss of his personal property. See Wadhams v. Procunier, 772 F.2d 75, 77-78 (4th Cir. 1985). Accordingly, plaintiff has not alleged a violation of his due process rights, and defendants' Motion to Dismiss will be granted as to this claim.

    *d.    Supervisory Liability*

Supervisory officials may only be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). This supervisory liability is not premised on respondeat superior, but upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Id. (quoting Slakan, 737 F.2d at 372-73). "[L]iability ultimately is determined 'by pinpointing the persons in the decisionmaking chain whose deliberate indifference permitted the constitutional abuses to continue unchecked.'" Id. (quoting Slakan, 737 F.2d at 376). To establish supervisory liability under § 1983, a plaintiff must demonstrate:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Id. at 799 (citations omitted).

Here, plaintiff has failed to allege that Sheriff Baron had actual or constructive knowledge of conduct by his subordinates that represented a "pervasive and unreasonable risk" of constitutional injury. Although one could reasonably infer that Sheriff Baron was aware of

9

plaintiff's medical issues due to seeing plaintiff's written grievances and the contents of his medical records, there is no allegation or indication that Baron was aware of any facts that would indicate his staff would deny meals or medication to inmates or use excessive force against them. Indeed, plaintiff concedes that "Sheriff Joseph. P. Baron had no direct pertisapation [sic]" and named him as a defendant only because the other defendants worked for him. Compl. § IV, p. 11. Given this admission, defendant Baron's Motion to Dismiss will be granted.

CONCLUSION

For the above-stated reasons, an Order will issue dismissing defendants Samboy and Baron from this lawsuit as well as dismissing the claims regarding lost property and denial of pain medication.

Entered this 5th day of February, 2019.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge