IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

David Atkins,  )
    Plaintiff,  )
        )
v.  )   1:18cv354 (LMB/TCB)
        )
Lt. Glaser, et al.,  )
    Defendants.  )

## MEMORANDUM OPINION

Proceeding pro se, David Atkins ("plaintiff" or "Atkins") initiated this civil rights action pursuant to 42 U.S.C. § 1983, alleging that defendants violated his constitutional rights during his incarceration. Defendants Thomas Glaser ("Glaser" or "Lt. Glaser"), Erica Williams ("Williams" or "Sgt. Williams"), and Robert Cleek ("Cleek" or "Cpl. Cleek") (collectively "defendants") have filed a Motion for Summary Judgment supported by a legal memorandum, two affidavits, and several documentary exhibits [Dkt. Nos. 25-26]. Plaintiff received the notice required by Local Rule 7(K) and time to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) [Dkt. No. 27]. He later submitted a document he titled a "Memorandum in Support of Summary Judgment" [Dkt. No. 34].[1] Defendants filed a brief reply [Dkt. No. 35], and plaintiff submitted a surreply [Dkt. No. 36].[2] This matter is therefore ripe for adjudication. For the reasons stated below, defendants' Motion for Summary Judgment will be granted, and judgment will be entered in favor of defendants Glaser, Williams, and Cleek.

---

[1] This document will be liberally construed as an unsworn affidavit through which plaintiff has expressed disagreement with defendants' recitation of facts.

[2] In this second responsive filing, plaintiff included two documents already submitted by defendants and once more registered disagreement with certain facts defendants set out.

## I. Background

The undisputed facts are as follows.[3] Atkins arrived at Norfolk City Jail ("NCJ") on October 10, 2017. Defs' MSJ, ¶ 2. Per institutional protocol, he immediately underwent classification and medical screening. Id. Plaintiff's "Patient Profile" later reflected that he suffers from hypoglycemia and seizures. Defs' MSJ, ¶ 2; Samboy Aff., Ex. A. On the day of his arrival at the jail, plaintiff was prescribed Keppra, an anti-convulsant medication to address his seizure disorder. Id. at ¶ 3; Samboy Aff., Ex. B. The following day, October 11, 2017, plaintiff was prescribed a chewable glucose tablet to be taken as needed. Id. And on October 17, 2017, Atkins was placed on a "Restricted Medical Diet" through which he was to receive an additional snack in the evening and was not to be served tomatoes. Defs' MSJ, ¶ 5. During his time at NCJ, Atkins repeatedly refused to take his anti-convulsant medication even as staff members explained to him the possible negative consequences of doing so. Defs' MSJ, ¶¶ 6-7; Samboy Aff., Ex. E.

During lunch service on October 21, 2017, defendant Cleek was informed that Atkins took issue with the quality of his food and was creating a disturbance in the service area. Defs' MSJ ¶ 8; Cleek Aff. ¶ 3. Cleek reported to the scene and spoke to Atkins, who showed Cleek his

---

[3] The facts set out in this section derive from defendants' memorandum in support of their Motion for Summary Judgment [Dkt. No. 26 ("Defs' MSJ")], the affidavits of Lt. Col. of the Norfolk Sheriff's Office Raymond Fiorella [Dkt. No. 26-1 ("Fiorella Aff.")], Lt. Thomas Glaser [Dkt. No. 26-2 ("Glaser Aff.")], Health Service Administrator Carisa Samboy [Dkt. No. 26-3 ("Samboy Aff.")], Cpl. Robert Cleek [Dkt. No. 26-4 ("Cleek Aff.")], Sgt. Erica Williams [Dkt. No. 26-5 ("Williams Aff.")], and Cpl. Paul Brown [Dkt. No. 26-6 ("Brown Aff.")].

Plaintiff's complaint [Dkt. No. 1] and two responsive filings [Dkt. Nos. 34, 36] are unsworn and unauthenticated and therefore cannot contribute to the factual record under consideration at this juncture. See Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir. 1993) (explaining that "[i]t is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment").

2

lunch tray; it contained beef stew, on top of which sat a large black insect. Defs' MSJ ¶ 9; Cleek Aff. ¶ 4. Atkins loudly demanded a grievance form to document this issue. Defs' MSJ ¶ 10; Cleek Aff. ¶ 4.

Lt. Glaser then reported to the food service area. Cleek Aff. ¶ 5. Both Glaser and Cleek asked plaintiff if he would accept a new tray of food, but plaintiff refused, arguing that the entire batch of stew was "contaminated." Id. at ¶ 5. Other inmates then also refused to eat their food. Id. at ¶ 6. All told, 49 lunch trays were returned or refused by inmates. Id. at ¶ 7. Glaser then conducted a brief investigation into how an insect would have arrived on plaintiff's tray. Defs' MSJ; Glaser Aff. ¶¶ 8-9. Concluding that it was unlikely the bug was in plaintiff's food before plaintiff received the tray, Glaser once more offered Atkins a fresh serving. Glaser Aff. ¶ 10. Plaintiff again refused. Id.

Atkins declared that the inmates would be provided bagged lunches in place of the beef stew. Id. at ¶ 11. Glaser informed Atkins that he would receive "a violation" for interfering with staff duties and that he would be transferred to a different housing unit while prison officials addressed the other inmates regarding the quality of the food and the results of Glaser's investigation. Id. at ¶ 10. After hearing from Glaser and Cleek, the other inmates eventually agreed to eat the stew, but because the food had been sitting out for the duration of the incident, kitchen staff were ordered to prepare new hot trays. Id. at ¶ 14.

At roughly this time, Lt. Glaser summoned Sgt. Williams to transport Atkins from Housing Unit DMX2 to Section 1A. Williams Aff. ¶ 3. Cpl. Paul Brown accompanied Williams during Atkins's escort. Brown Aff. ¶ 3. During the move, Atkins, in violation of standard procedure, repeatedly turned around to address Williams and Brown. Williams Aff. ¶ 6. Williams repeatedly verbally directed Atkins to turn around and to stop talking. Id. at ¶ 7.

3

Atkins was noncompliant with Williams's orders, and Williams briefly placed her hand on Atkins's back to direct him to face the wall. Id.

Lt. Glaser later visited Atkins in Section 1A of NCJ. Glaser Aff. ¶ 16. Atkins asked whether he could be provided a new lunch tray, and Glaser responded that he would be given one once the kitchen finished preparing the fresh food. Id. at ¶ 17. Atkins then stated that he did not want beef stew. Id. at ¶ 18. Glaser replied that this was the only dish the kitchen was serving and again asked whether plaintiff wanted a new tray. Id. Atkins said that he was not refusing lunch but did not want to eat beef stew. Id. Glaser repeated his question, and Atkins provided the same answer, leading Glaser to document that Atkins refused his lunch. Id. at ¶ 19.

Shortly after Glaser's visit, Atkins informed Dpt. Ashley Turner that he had just suffered a seizure. Fiorella Aff., Ex. C. Plaintiff was transported to Sentara Norfolk General Hospital complaining of elbow pain, apparently from striking the joint during his seizure. Id. At the hospital, Atkins informed Dr. Ryan Tomberg that this incident had been brought on due to hypoglycemia. Samboy Aff., Ex. F. Tomberg ordered a glucose screen which showed that plaintiff's glucose levels were within normal limits at the time of the test. Id. An x-ray examination of plaintiff's elbow revealed that the joint was not fractured or dislocated but had a small bone spur. Id.; Defs' MSJ ¶ 61.

## II. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." Variety Stores v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018).

4

Once the moving party has met its burden to show that it is entitled to judgment as a matter of law, the nonmoving party "must show that there is a genuine dispute of material fact for trial ... by offering sufficient proof in the form of admissible evidence." Id. (quoting Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 216 (4th Cir. 2016)). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

### III. Analysis

Plaintiff's remaining claims arise under the Eighth Amendment.[4] Atkins's complaint alleged facts supportive of claims based on theories of use of excessive force and based on the conditions of his confinement. As explained below, defendants have introduced, and plaintiff has failed to call into question, evidence that demonstrates that defendants did not violate plaintiff's rights.

### A. Excessive Force Claim Against Sgt. Williams

Plaintiff alleges that Sgt. Williams employed excessive force against him while she escorted him from the food service area of DMX2 to Section 1A of NCJ. The Eighth Amendment's prohibition on cruel and unusual punishment forbids prison officials from inflicting unnecessary and wanton pain and suffering on prisoners. Whitley v. Albers, 475 U.S. 312, 319 (1986). It "does not prohibit a de minimis use of force that is not itself repugnant to the conscience of mankind." Thompson v. Commonwealth of Virginia, 878 F.3d 89, 100-01 (4th Cir. 2017) (quoting Hudson v. McMillian, 503 U.S. 1, 9-10 (1992) (internal quotations omitted).

---

[4] Several claims have already been dismissed in response to motions to dismiss filed by other defendants. See Dkt. Nos. 22-23.

5

The "core judicial inquiry" in an excessive force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7. Determination of whether force was necessary or intentionally aimed at inflicting unnecessary physical harm requires consideration of factors such as the need for the application of force, the relationship between the need and the amount of force used, the extent of the threat to the safety of staff and inmates reasonably perceived by responsible officials, the extent of injury inflicted, and any efforts made to temper the severity of a forceful response. Whitley, 475 U.S. at 321; see also Wilkins v. Gaddy, 559 U.S. 34, 37-39 (2010).

Review of the factual record demonstrates that the majority of the Whitley factors resolve in favor of Sgt. Williams. The record establishes that plaintiff was repeatedly noncompliant with Williams's verbal commands to face away from her and to stop speaking. Williams's de minimis use of force—placing her hand on plaintiff's back—was necessary in light of Atkins's noncompliance. See Bryant v. Johnson, 2012 WL 4458214, at *6 (W.D. Va. Aug. 21, 2012) (finding "[s]ome type of force was necessary to compel plaintiff's compliance in light of his continued intransigence" and refusal to voluntarily step onto a scale). Furthermore, there is no evidence that Williams used any more force than was necessary to gain such compliance. Indeed, it is hard to imagine a less severe use of force than the one described by the factual record in this matter. Finally, the record does not reflect that plaintiff suffered any injury from his encounter with Williams. There is, in short, no evidence to suggest that Williams acted maliciously or sadistically in touching plaintiff's back. She is entitled to judgment as a matter of law, and the Motion for Summary Judgment will therefore be granted as to this claim.[5]

---

[5] Because no constitutional violation occurred, defendant Williams is also entitled to qualified immunity. See Turmon v. Jordan, 405 F.3d 202, 204-05 (4th Cir. 2005).

### B. Conditions of Confinement Claim Against Lt. Glaser and Cpl. Cleek

The complaint could also be read to support an Eighth Amendment claim against defendants Glaser and Cleek. Specifically, the allegations that these defendants failed to replace plaintiff's meal tray—particularly in light of plaintiff's medical history of hypoglycemia and seizures—could support a claim that plaintiff's conditions of confinement were violative of his constitutional rights. To establish a claim that one's conditions of confinement constituted cruel and unusual punishment, a plaintiff must show (1) an objectively serious deprivation of a basic human need—one causing serious physical or emotional injury, and (2) that prison officials were deliberately indifferent to that need. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

Only extreme deprivations will satisfy the first prong of this test, and it is a plaintiff's burden to show that the risk from the conditions of his confinement was so grave that it violated contemporary notions of decency and resulted in serious or significant physical or emotional injury. Hudson at 8. To meet the second prong, a plaintiff must show that defendants knew of circumstances from which an inference could be drawn that a "substantial risk of serious harm" was posed to plaintiff's health and safety, that they drew that inference, and that they then disregarded the risk. Farmer, 511 U.S. at 837.

The conditions plaintiff complains of do not amount to an objectively sufficiently serious deprivation such that the protections of the Eighth Amendment are triggered. The existence of a bug in plaintiff's food does not, standing alone, represent a serious deprivation of a basic human need from a constitutional perspective. See Belfield v. Stolle, 2015 WL 1526212, at *3 (E.D. Va. Apr. 3, 2015) (finding plaintiff who alleged that his food trays "arrive[d] [w]ith bugs on the trays from the kitchen every morning" failed to state an Eighth Amendment claim upon which relief could be granted). Nor does a temporary deprivation of food trigger a constitutional

violation. See Mcgivery v. Mathena, 2014 WL 2967622, at *2 (W.D. Va. July 1, 2014) ("occasional, short-lived problems with prison food service and isolated instances of inmates missing a meal or two do not implicate the Eighth Amendment").[6]

Even if the existence of insects in meals or temporary deprivation of food to an inmate with a history of hypoglycemia and seizures *were* to represent a serious deprivation for the purposes of the Eighth Amendment, and even assuming defendants Glaser and Cleek were aware of plaintiff's medical status,[7] there is no evidence that suggests that these defendants were indifferent to the potential consequences of such conditions. The record shows that Cleek and Glaser repeatedly offered plaintiff replacement meals both before and after a fresh batch of food had been prepared. On both occasions, plaintiff rejected the food. There is no dispute as to these facts, and that these two defendants did not force plaintiff to consume food or capitulate to his request for an alternative meal does not mean that they acted with deliberate indifference.[8] Defendants Cleek and Glaser are entitled to judgment as a matter of law, and the Motion for Summary Judgment will be granted as to this claim.[9]

---

[6] In plaintiff's favor, there is some precedent to suggest that withholding food from inmates with certain medical needs can constitute a serious deprivation for the purposes of the Eighth Amendment. See, e.g. Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir. 1999) (reversing dismissal of Eighth Amendment claim based on alleged failure of prison officials to provide diabetic inmate special foods). There does not, however, appear to be any precedent supportive of an Eighth Amendment claim based on facts directly analogous to those in the matter at hand.

[7] There is no admissible evidence in the record to suggest that defendants had any knowledge of plaintiff's medical history.

[8] Because no constitutional violation occurred, defendants Glaser and Cleek are entitled to qualified immunity. See Turmon v. Jordan, 405 F.3d 202, 204-05 (4th Cir. 2005).

[9] Defendants additionally cite law in support of the notion that any elbow injury plaintiff suffered was not objectively sufficiently serious to trigger constitutional protections. See Defs' MSJ. But plaintiff does not contend and the record does not support the idea that defendants acted indifferently toward his elbow injury. Accordingly, this decision analyzes plaintiff's Eighth

## IV. Conclusion

For the reasons stated above, defendants Thomas Glaser, Robert Cleek, and Erica Williams's Motion for Summary Judgment [Dkt. No. 25] will be granted, and judgment will be entered in their favor by an Order to issue with this Memorandum Opinion.[10]

Entered this 27th day of September 2019.

Alexandria, Virginia

/s/ *[signature]*
Leonie M. Brinkema
United States District Judge

---

Amendment claims only as they relate to food service issues and the seizure plaintiff alleges those issues caused.

[10] Plaintiff's claims against Officer A. Turner will also be dismissed in the Order that will accompany this Memorandum Opinion. By an Order dated April 9, 2018, this Court directed service on all named defendants. Dkt. No. 3. At that time, plaintiff was advised that if the Court was unable to effect service on any named defendant through the Order and the defendant was not otherwise served within 90 days of filing, that defendant would be dismissed from this action without prejudice. Id.; see also Fed. R. Civ. P. 4(m). Over 500 days have passed since April 9, 2018, and defendant A. Turner has never been served. Accordingly, the claims against this defendant shall be dismissed without prejudice.